Good morning, Your Honors. I'm going to please the Court, Jeff Worms, for Senator Decker, the trustee. Your Honor, the overview of this case is that it's one about the basic bankruptcy policy of rateable distribution. It's unfortunate if the appellees don't get the compensation they thought they were entitled to under their employment contract, but they are no different than the hundreds of other creditors in this case who also have not been paid under their contracts. And this Court has been steadfast in abiding by the policy of rateable distribution and treating the same all claims arising from debtor-creditor relationships. Counsel, isn't there a difference because this case had a state court injunction that was part of the circumstance? No, Your Honor. If you look at Section 101.5 of the Bankruptcy Code where it talks about what is a claim, it talks about anything, any breach of performance or contract that could be satisfied through money judgment is a claim. Okay. So I guess my question is what effect, if any, did the state court injunction have on this case? Okay. Well, with regard to the effect it had originally, it prevented the debtors from acting in violation of the injunction. But upon the bankruptcy, what happens under 105 and under the policy of rateable distributions, any breach of the injunction which could be remedied by a payment of money becomes a claim. I have trouble with that. You don't remedy violations of injunctions by payment of money unless the judge decides that's the remedy that in the judge's discretion is appropriate. The usual remedy is to put somebody in jail. You're right, Your Honor. It's not like a breach of contract where they have a choice whether to comply with the injunction as though it were a contract or else pay damages. The whole idea of an injunction is no choice, just do what you're told. Well, Your Honor, in fact, that's right to a certain extent. But in the Ninth Circuit case of Chope, the Ninth Circuit recognized that under California law, there was a right for money damages upon the violation of the injunction. There might be, but wouldn't that be an election of the person injured by the breach? Well, under 1015, it doesn't matter. As long as there's an alternative right to money judgment, then it becomes a claim under the Bankruptcy Court. Now, if you had the type of injunction, say, the injunction prevented a person from approaching another person for fear of violence, there may not be a money damage remedy for that. The court could enforce that. But here, where you have really all it is, Your Honor, there's two layers. There's the policy which provides the rights to what's involved in the policy, the death payments and the cash. And then on top of that, there is this contract, this employment agreement. And that's what's being enforced by the injunction. It just basically adopts. I couldn't find the actual injunction because the excerpts are kind of voluminous. Is it in here? I believe so, Your Honor. You happen to know where? I can find out and get that to you. Okay. But you'll see, when you see the State Court injunction, all it does is it lifts the exact language out of the contract, the employment contract. So you have this one layer of the policy which gives rights and the second layer of the injunction. I have no problem with the idea that when you've got a contract, except where it's a contract for something unique like conveyance of land, the remedy is damages. But once there's an injunction, I don't understand where the obligor can do anything with compliance. Well, Your Honor, I refer you to Ohio v. Kovacs. And in that case, there was an injunction. And the Supreme Court there said, look, there's a mandatory injunction for the debtor to clean up. But if the cleanup is going to require payment of money, then the estate does not have to comply with that injunction. That injunction, to the extent that they require money to be paid, becomes just a claim against the estate. So the Supreme Court has already ruled that injunctions are subject to 1015 of the Bankruptcy Code. And now here we have the same situation. Let me ask you a question about the details of the conduct. I'm not sure I understood this right, but if I did understand it right, the way this insurance worked was it was the kind where the person buying the insurance pays maybe one big lump sum right at the outset or maybe pays over the first three or four years of the insurance contract and then never writes a check again. Instead, what happens is because of the big payments at the beginning, the insurance company accumulates cash value at a faster rate than usual and takes the subsequent premiums out of the accumulated cash value. So no positive act of writing a check is necessary by the owner of the policy. Is that correct? I don't think so. No, I think what happens is, Your Honor, that the party continues to pay premiums, but there's a default provision that if the party doesn't, they can allow it to be taken out of their cash value, which belongs to the party paying. I've seen policies like this, and the way they're usually marketed, if I understand it right, is, Yeah, it says that if you want to keep your cash value up and you want to borrow against your life insurance. But the other thing you can do is just forget about it, and you get $100,000 or $300,000 of life insurance for very little total cash. And I thought this was that kind of policy. I don't know, Your Honor, how it was marketed or whether it was a type. All I know is that there is an obligation to continue payments, but there is a cash value that you can have the payments withdrawn from that cash value. And will that keep the policy up at its full level so that if the insured dies, the beneficiary will get a full payment of the policy? I believe so, but I'm not sure. That's another thing. It would be nice to have an excerpt to reference. I'm not sure I know where that is, Your Honor. Read the policy. Well, didn't the injunction order them to keep up premium payments? Yes, it ordered them to continue to make payments. That's right, Your Honor. To keep the policy in effect, not to do anything to allow the policy to lapse. What I was getting at with my question is they could, even if they ceased making the payments, it seems to me that so long as they did not take the positive act of demanding the cash value for themselves or changing the beneficiaries, even if they never wrote another check, the beneficiaries would still get all the money when the named insureds died. If they allowed the company to withdraw from the cash value, I mean, I guess they could have said, no, we want to keep our cash value. The insurance company then would have had no way to pay the premiums. What I'm getting at is the injunction tells the company to pay the premiums. Right. Arguably, that can be remedied by damages. If the named insureds or beneficiaries paid the premiums when the company wasn't doing what it was supposed to, they could just get damages for the premiums they paid. However, the part of the injunction that prevents the company from taking the cash value for itself or changing the beneficiary, that could not be remedied by payment of damages in the same way. Oh, certainly it could, Your Honor, because what we're talking about is an insurance contract. The full amount of damages, I mean, even if they cancel the policy, the most they'd be entitled to is the $2 million of death benefits at the end of the road. No, you're not entitled to anything until the named insured dies. So you can't get damages. I mean, suppose we have an agreement that you have to do something until I die, but I'm not dead. I can't sue you if you breach it for damages. Well, I would disagree because, first of all, I think we all know that eventually everyone is going to die. It's not a situation where you don't know if anything's going to happen. You do. What happens is you were robbed of your, and I guess you could use even a present value perhaps, but you were deprived of your ability to collect $2 million, which is the maximum you could ever get under any circumstances. And that's simply a payment of money. If anything is, if any type of contract could be satisfied by a payment of money, it would be this type of contract. And I want to speak more about this, but before, I'd like to make one point, because I think it's an important point and the BAP didn't really address it, and that is that what we have here is a cash value that we're entitled, that the debtor was entitled to under the policy, and then there was this injunction which prevented the debtor from getting to this cash value. But upon the bankruptcy, the trustee is vested with the rights of a levying creditor, and under this Court's Chope opinion, a levying creditor can take the cash value, can attach it and levy on it, and take it free of the injunction. Counsel, if there were a failure to comply with the injunction procedurally, how would that work in terms of enforcement? I'm sorry, Your Honor? If there were a failure to comply with the injunction, how would that work in terms of enforcement of the injunction? Are you saying that the beneficiaries could file a separate complaint for damages? How would they enforce it? You mean if the levying creditor levied on the property and took it, how would that work? Assuming that the beneficiaries are saying there's a violation of the injunction, outside the bankruptcy context. Oh, outside the bankruptcy context. Outside the bankruptcy context. How would that injunction, how would the violation of the injunction be enforced? There are two ways, Your Honor. They could either ask the court to avoid the transfer of the debt benefits and have it vested back in them, or Ask which court? Whatever court issued the injunction, I assume. Okay. Or they could sue under California law for their monetary damages being, I assume, the $2 million that they were entitled to. Now, what case authority are you relying upon to say that if there is one case involving an injunction, that a separate action can be filed for breach of that injunction? What case authority are you relying upon for that? In the Ninth Circuit, the Choke case, Your Honor, this court determined that under California law, a breach of an injunction permits a suit for money damages. And it cited, I think the Hines case was the California Supreme Court case for that proposition. So, Your Honor, and before I go any further, I just want to also make one other point. I don't want the court to get thrown off track about, by the fact that there was a change in beneficiary. Because even had there not been a change in beneficiary, we'd be here with the same situation. What we would have is a policy which allows the debtor to change the beneficiary, okay, although it's restricted by the injunction. If the bankruptcy strips the injunction, the restrictions of the injunction, then the trustee is left with the authority or rights under the policy to change the beneficiary to the estate. The only thing that prevents the trustee from doing that. You know, I don't even see the need for that. Can't the owner of a policy cash it in without changing the beneficiary? He could cash it in, but he also could change, he could also make himself, or he could keep it and make himself the beneficiary. Yeah, but your estate really doesn't want to wait until these people die to get them. No, but the estate can sell to persons who will wait for the insurance to die. That might have some value. The estate liquidates all its assets. So, counsel, under your theory, the injunction goes away in light of the bankruptcy principle to marshal the assets? Yes, for rateable distribution. What happens, it goes away if the remedy for the breach of the injunction would be one for monetary damages under 101-5. There is no exception for injunction. If you look at that code section, it doesn't say, you know, injunctions are not applied here. As a matter of fact, the CRS case out of Massachusetts, which we cite, goes at length, discusses why, you know, it makes no sense for injunctions to be an exception to this very important policy under the bankruptcy code. It seems like you don't need an exception for injunctions because the effect of the injunction is that it's an adjudication establishing that although the company is the owner of legal title to the insurance policies, the title is burdened with an equitable obligation to these two people that got the injunction, Powell and Lyons. All the injunctions in this case did, Your Honor, if they had never discussed equitable benefits or ownership. It doesn't have to. If an injunction never says legal or equitable, but it says you own the house, but you have to take care of the house for the children and give it to the children when they grow up, even though it doesn't use any words of equity at all, it has created a limitation on the legal title. Well, two things, Your Honor. First of all, this particular injunction, it didn't really reflect on the rights of the policy. It just enforced a separate contract which placed a restriction. The second of all, the answer, I think, is fairly simple. Under 101.5, and under the Chope case, I believe, if there is a right to money damages for the violation of this injunction, which Chope recognizes, then under 101.5 it becomes a claim. It is the very basis of the policy of rateable distribution, which is one of the most powerful of all the underpinnings of the Bankruptcy Code. And I would like to reserve my time unless you have more questions right now. Thank you, counsel. Thank you. Good morning, Your Honor. May it please the Court. My name is Madison Spock, and I represent the appellees. If I might, Your Honor, I can give you a couple of citations. The injunction appears a couple of places in the record. At page 416, I believe that's the page where the Bankruptcy Appellate Panel or the Bankruptcy Appellate Panel exerted the main provisions of the order. And at page 51 and page, there's one copy at page 257, depending on which volume you happen to have at your fingertips. But the actual injunction is not there. Yes. The actual injunction is there or is not there? Yes, the order of the Orange County Superior Court entered in 1989 is in the latter two, but not in the Bankruptcy Appellate Panel's opinion. I guess I was asking, is that document in the excerpts of record, the injunction itself? Yes, Your Honor, I believe so. And I'll double-check it. Oh, okay. All right.  At page 51 and at page 257, I believe. Yes, Your Honor, the Orange County Superior Court order is at 257. All right. Thank you. Your Honor, the point that the Court has raised is precisely what happened here in terms of the mechanics of the policy. There was a purchase of the policy originally back in the 1984-85 timeframe. There were ongoing obligations to pay premiums, and the payment of the premiums plus the original purchase caused the value of the policies to exceed the face amount of the death benefit. So as a result, in approximately August of 2000, I tried to find one letter. Occasionally in the record there are some statements that show the value of the policy, which isn't the numbers aren't important. What's important is it explains how the policy works. The value of Mr. Powell's policy had reached approximately $1,200,000. So it had a cash-in value, I believe, at that time of approximately $231,000. As a result, the trustee or the trustee to simply take the policy would have the option of cashing for some cash benefit or selling to a company who purchases policies for the subsequent death benefit. Counsel, will you please respond to opposing counsel's position that because there was a right to damages, if there were a violation of the injunction, this is a claim for purposes of the bankruptcy? Yes, Your Honor. The right to have monetary damages is not something merely because it's available. It immediately converts any injunction that's a pre-petition injunction into a post-petition claim for monetary damages. This issue was weighed both by the bankruptcy court initially and by the bankruptcy appellate panel. The reason for that is that there may be a money damage remedy that's available. For example, any personal injury can ultimately be compensated by money, but an injunction enjoining someone from inflicting personal injuries is something that doesn't become a claim for monetary damages once it passes into a bankruptcy estate. What's your best case authority to support that argument? The UNICOM case, Your Honor, and cases such as the cases that are cited in the CHOP case to the California Supreme Court and the cases cited by the bankruptcy appellate panel on that point. There were several cited for different shades of the proposition, and the reason I refer to multiple cases is that the issue isn't whether or not. Could I ask you for your best case for that proposition? Of those, I don't know how to draw one, Your Honor, which I can identify as the best among them. I think probably the discussion from the bankruptcy appellate panel on that direct point summarizes the principles best, and I don't remember which case specifically the court relied on in that, but I thought that was well stated in the court's opinion. The difficulty is that this relates to the CHOP case itself creates an enormous problem and an enormous danger to invest a bankruptcy trustee with enormous powers that I think go far beyond what was ever intended by subsection 5 of section 101. In the CHOP case itself, the levy that took place and the second lawsuit that took place did not involve originally the violation of the injunction. That was a case where Mr. Lawrence was apparently out spreading derogatory information about an issuer. The issuer saw a stock plummet, the stock at that point. The issuer sustained a loss and sued Mr. Lawrence, who had been engaged in selling the stock short. The injunction in that case prevented Mr. Lawrence from disposing of the money that was in an account. It must have been a fair amount because when the government ultimately executed on that account, it obtained something in excess of $600,000, leaving more than $200,000 for the creditor who obtained the injunction to come in and later on levy on at a later time. But it wasn't the situation that we have in this case where the injunction was against the party who subsequently violated the injunction. And that distinction is critical because it negates the theory of the trustee that this has to arise in some sort of debtor-creditor transaction or outside of that in order to be applicable. Because in this case, there was an existing injunction which was just simply violated by the debtor before the case was filed. And as a result of that, there was nothing given, nothing exchanged by the appellees in this case or anything else that occurred at that time other than to scream outrage afterwards. And apparently, they were able to stop the cashing of the policy at that time. But by the time the case was filed, the transfer, the change in beneficiary had not been directed, and so the estate at that point assumed the status of the insurance policy as it existed when the beneficiaries had been changed. So as a result, it comes in a different context. And the UNICOM case, as the Bankruptcy Court originally found here, controls if the simple reinstatement of title in the beneficiaries doesn't control as an exercise of the court's equitable power. Counsel, did the Bankruptcy Court have authority or the BAP have authority to enforce the injunction or to fine the employer in violation of the injunction? I don't know the answer to that, Your Honor. The Bankruptcy Court, in the sense that whether to enforce the injunction, it was an injunction issued by the Superior Court of the State of California. The Bankruptcy Court had the authority certainly to deal with the question of whether the debtor had rights in the property, the underlying property, because the Bankruptcy Court always has the authority and jurisdiction to determine what are the assets of the estate and what is property of the estate. So it certainly had that authority. But whether it would have had the additional authority had we asked for a contempt citation to punish the debtor, I don't know whether that would be the case. But the remedy in this case was easy enough. There was no need from a practical standpoint to punish the debtor itself. The need that the appellees had was to get the beneficiaries reinstated as they were pre-petitioned, and then presumably because the trustee subsequently stopped making the payments of the premium and the premiums are now being paid by a deduction from the equity in the policy, then presumably that is something which we wouldn't disagree with that there is a money claim for, because that was an order to pay money. But, Counselor, didn't the Bankruptcy Court determine that the change of beneficiary designations was invalid? Yes, Your Honor. And in order to do that, didn't the Bankruptcy Court have to determine that the injunction had been violated? Yes, Your Honor. And so what authority did the Bankruptcy Court proceed under in determining that the injunction had been violated? I thought typically the violation of injunctions is left to the court that imposed the injunction. That issued the injunction, yes, Your Honor. That's right. The authority, there were two, and the Bankruptcy Court looked at it as a two-step process. It didn't reach the second step, but I think that clearly was this Court's decision in the Unicom case, which addressed specifically the issue of whether wrongfully obtained property constitutes property of the estate. I don't know if that's simplifying the ruling a little bit. It was that wrongfully obtained property in violation of an injunction? Not in that case, Your Honor. That's what troubles me about this case is that I have some difficulty conceptually with the Bankruptcy Court administering an injunction that was imposed by a state court. I think, Your Honor, the Bankruptcy Court needn't have gone any farther than it did, which is to make the decision on whether the debtor had the power to bring that property into the estate, whether that property as a definitional matter even constitutes property of the estate, and whether if it came into the estate nominally by virtue of legal title belonging to the debtor at the time, as of the day that the petition was filed, because bankruptcy is a very special creature in the law, in that whatever the debtor has as of the moment of the petition then just becomes property of the bankruptcy estate. So what you're saying is the Court wasn't enforcing the injunction. All it was doing was deciding what the estate owned? Yes, Your Honor. And I believe that's as far as the Bankruptcy Court had to go under those circumstances, and that had we attempted to take further steps and actually try to do something that would punish the debtor or possibly obtain collateral or incidental damages from the act or something like that, I think there might have been a conceptual difficulty in imposing any additional relief. But because it's tied so closely to the issue of what constitutes property of the estate and what the rights of the trustee are as the successor in interest of the pre-petition debtor, that the Bankruptcy Court was within its power to adjudicate those questions without the necessity of going any further. If there are no further questions, thank you. Thank you, Your Honor. Thank you, Your Honor. With regard to the two very important points, with regard to the cash value, it's vital for this Court to understand that under 544-2 the trustee is a levying creditor, and that under the Choke case a levying creditor can levy on property despite there being an injunction which would prevent the debtor. Let me explain my trouble with that. It seems to me that the injunction creates an equitable interest, so it becomes like property held in trust. If a lawyer goes bankrupt, I wouldn't think a levying creditor could levy on his trust account. And this strikes me as analogous because the injunction causes those insurance policies to be held in trust for Powell and Lyons. In fact, Your Honor, it doesn't create a trust. And, in fact, the Choke case also, if you read the Choke case, you will see that there there was an injunction, a preliminary injunction, at the end of the case there was a constructive trust imposed, and that court very plainly said the original preliminary injunction did not create a trust. An injunction does not per se create a trust, and that's what happened here. The preliminary injunction did not create a trust. It did not affect the ownership rights. All it did is it restricted the rights of the owner to exercise his ownership rights. Why didn't it create a resulting trust? Why didn't it? Yeah. You mean a constructive trust? Well, first of all, if you look at the record, I don't have it, but it's in there, you will see that the original complaint never asked for a constructive trust. The words weren't used. Pardon me? I know that the words weren't used, but why isn't that a correct characterization of the relationship? I'm sorry. The back explains it, Your Honor, that the plaintiffs never requested an equitable trust or any type of trust. If you look at the complaint, you will see that it never even involved that insurance policy. If you look at the court's decision, also in the record, they never discussed a trust. The trust just all of a sudden, or trust, excuse me, the injunction, just came up in the judgment. It was the first time anyone even discussed the insurance policies and the rights to the insurance policies. So there was no trust. And also the opposing counsel says, well, you know, CHOPE isn't really applicable because the trustee is the same party. No, the trustee is not the same party. The trustee has the rights of a separate levying creditor. He is not the same party who is subject to the action in which the injunction arose, and that is very, very important. Now, that has to do with the cash value. With regard to the death benefits, again, the death benefits, yes, there was an injunction, and they said you have to keep the policy alive, but the Supreme Court said that in bankruptcy, an injunction which requires payment of money from the estate, and if the cash value is property under the estate because of the levying creditor, then using it to pay the policies is a violation of the principles set forth in COVAX. And there's really no point. That ends the discussion. You have to then first establish, of course, that it is property of the estate. And once you do that, the COVAX comes in. So if we can establish, and I think the law is clear, that under 544A2, he was a levying creditor, and under CHOPE, a levying creditor is not bound by the injunction. That becomes property of the estate, and they cannot use it to pay the premiums to keep the policy going. That's very, very important. With regard to the- Thank you, counsel. Thank you. Decker v. Aurora is the-
judges: Canby, Kleinfeld, Rawlinson